Gibson, J.,
concurring in part. I concur in paragraphs two, four and five of the syllabus but can not agree with the court in its answer to the critical question in this case, viz., what part, if any, of the activities required of one acting in a representative capacity before the Industrial Commission or the Bureau of Workmen’s Compensation or both constitute the practice of law for which only attorneys at law are qualified? The answer to this question involves the resolution of many conflicting interests and considerations.
In an attempt to find a mold in which to fit this issue, many cases concerning the unauthorized practice of law by those not licensed as attorneys at law were examined. Such cases, including those relating specifically to workmen’s compensation, are filled frequently with broad and sometimes all-encompassing statements, which might be termed political in nature, as to what constitutes the practice of law, but in the end the courts find that not all is black or white, and laymen usually are permitted to continue performing some acts alleged to constitute the unauthorized practice of law. Clearly, the answer to the critical question in this case is not to be found in any generalized definition of what constitutes the practice of law.
There can be no doubt that here it is necessary to balance *155 (1) the public interest in the greater protection generally afforded the public in matters relating to the law by persons who have pursued required courses of legal training, passed examinations showing their qualifications in legal matters and who are subject to ethical standards enforced by this court against (2) the public interest, as expressed in constitutional and statutory provisions, in affording workers compensation for injuries or death arising out of and in the course of employment without necessity of litigation, attorneys, and their attendant costs. (Attention is invited to Goodman v. Beall el al., Industrial Commission [1936], 130 Ohio St., 427, where Zimmerman, J., for this court, discussed the objectives of both Section 35, Article II, Ohio Constitution, and the Workmen’s Compensation Act.) These conflicting interests are represented by the committee, which emphasizes the necessity of protecting the public against the hazards of advice and representation of persons unqualified in the law with respect to rights and obligations under the Workmen’s Compensation Act, as amended and as construed by numerous court rulings and by the respondents, who emphasize the informality of workmen’s compensation proceedings and the desire of the founders of the Ohio workmen’s compensation system to enable workers to obtain relief without paying attorney fees or court costs and without vexing litigation.
As all parties interested in this litigation, and there are many, are well aware, this same question was before this court in 1936 in Goodman v. Beall, supra, at which time, according to the syllabus, it was held:
“One appearing or practicing before the Industrial Commission of Ohio in a representative capacity subsequent to the time a claimant first receives notice of the disallowance of his claim under Section 1465-90, General Code, is engaged in the practice of law, and prohibition will lie against such commission to prevent the appearance or practice before it on rehearing proceedings of any person other than an attorney at law, duly admitted to practice.”
Although the judgment in the Goodman case has never been reversed or modified by this court, the administrative system established for processing workmen’s compensation cases has *156 been materially changed. Section 1465-90, General Code, referred to above, became Section 4123.51, Revised Code, and in 1955 that section was repealed when the functions theretofore performed by the Industrial Commission were divided between the Industrial Commission and the Bureau of Workmen’s Compensation. Because of the changes that have occurred both in organization and procedure since the Goodman case was decided, it is clear that the rule enunciated there is not controlling in the instant case.
The changes in organization and procedure concerning workmen’s compensation matters made in and since 1955 have had the effect of allocating to the bureau responsibility for the initial administrative processing of claims. The five Regional Boards of Review and the Industrial Commission generally sit in review of the decisions of the administrator and his deputies. Because of these changes in procedure it is deemed advisable to describe the claims load and how it is processed.
During 1961, a total of 295,267 claims, including claims processed by self-insured employers, were filed. 1961 Annual Report (Bureau of Workmen’s Compensation and Industrial Commission of Ohio), 14. During 1962, a total of 306,586 new claims were filed. Facts, Workmen’s Compensation in Ohio (March 1963), 1. Of new applications for benefits, approximately 85 per cent are certified for payment by the employer, 10 per cent are incomplete and 5 per cent are contested. Facts, supra, p. 4. In other words about two-thirds of the claims not disposed of in the Central Claims Section of the bureau shortly after receipt are cleared of any deficiencies during the course of administrative investigation and are allowed and paid by the deputy administrator without formal hearing with notices of allowance being sent to the parties.
First stage of adjudication-. Approximately 15,000 (five per cent of 306,586 claims) of each year’s new claims are set for formal hearing before the deputy administrator. About 5,000 additional claims, originally allowed but now being disputed on some new issue, e. g., causal relationship of the new disability to the original injury, are also heard by the deputy administrator each year. Under present practice, neither claimant nor employer is represented in from 35 to 40 per cent *157 of these hearings. With respect to those cases where representatives appear it is estimated that nonlawyers represent claimants in 60 per cent of the cases and employers in more than 50 per cent of the cases. Witnesses appear in less than one per cent of these hearings. The opposite party is seldom cross-examined. Representation consists primarily of expression of opinion by the representatives. In passing, it should be noted that respecting the reopened claims the conflict, if any, is more often between claimant and the bureau; the employer usually is not involved.
Second stage of adjudication: Either party may appeal to the Regional Board of Review or apply for reconsideration by the administrator. Sections 4123.515 and 4123.516, Revised Code. Reconsideration, if granted, is given in Columbus. Evidence is not reweighed at this stage. Neither the administrator nor his deputy is bound by common-law or statutory rules of evidence or by technical or formal rules of procedure. Section 4123.515, Revised Code. A letter expressing dissatisfaction with a deputy administrator’s order is treated as an application for reconsideration if it is filed within the specified time limit. Witnesses for one side or the other appear in about 6 per cent of the cases. Under existing administrative practice, neither employer nor claimant nor representative appears in about 15 per cent of the claims heard on reconsideration. Of the approximate 1,500 claims reconsidered each year (7% per cent of the 20,000 claims heard by deputy administrators) both employer and claimant were represented in about 50 per cent of the cases. The percentage of nonlawyers appearing as representatives on reconsideration is about 50 per cent.
It should be noted that under the provisions of Section 4123.519, Revised Code, the claimant may take an appeal from a decision of the administrator on application for reconsideration to the Court of Common Pleas instead of going through the third or fourth stages of administrative adjudication before taking such an appeal. Apparently no claimant has appealed to the Court of Common Pleas from the administrator’s decision on reconsideration. This would indicate that notwithstanding the statutory right to terminate the administrative process the parties in fact have used reconsideration as a means of *158 securing a quick review of obvious errors made by tbe deputy administrator.
Third stage of adjudication: Appeal to a Regional Board of Review may be bad from either a deputy administrator’s order or an order of tbe administrator on reconsideration. Section 4123.516, Revised Code. Although about 7% per cent of tbe some 20,000 claims beard by deputy administrators are reconsidered by tbe administrator, nearly 1/3 (approximately 6,000) of tbe deputy administrators’ orders are appealed to tbe five regional boards, and about 1/3 of tbe orders on reconsideration are appealed to sucb boards. Prior to a bearing on appeal, tbe regional board is required to consider a prebearing conference between tbe claimant and tbe employer. Section 4123.517, Revised Code. Witnesses are used in about one-quarter of tbe cases beard; examination and cross-examination of witnesses and parties appear more frequently than in earlier stages. Additional medical reports and lay statements are frequently filed at this level and briefs are filed occasionally.
Tbe formalities are increased at this stage as a matter of practice and by operation of law. Both claimants and employers are represented in about 75 per cent of tbe bearings; lawyer representatives predominate over lay representatives. Tbe Attorney General or one or more of bis assistants or special counsel designated by him represent tbe administrator in all cases. In tbe absence of tbe Attorney General or his designated assistants or special counsel, the administrator is required to select one or more of tbe attorneys in his employ as bis representative in sucb appeal. Section 4123.518, Revised Code. Tbe decision of a Regional Board of Review shall be the decision of tbe commission unless tbe commission upon timely application of the administrator, tbe claimant or the employer allows an appeal to tbe commission. Section 4123.516, Revised Code.
Fourth stage of adjudication-. Tbe Industrial Commission has discretion to hear or not to bear an appeal. Section 4123.516, Revised Code. Of tbe approximately 306,000 claims filed in 1962 about 2,000 of tbe claimants sought to appeal to the commission, but fewer than 250 appeals were heard. Tbe administrator is represented by counsel in all cases. Section 4123.518, Revised Code. In 75 to 85 per cent of these hearings *159 both employers and claimants are represented, predominantly by attorneys at law. More formality is observed as a general proposition. Records, which are more frequently taken here than at any other level, are occasionally taken by a party, usually the employer. Examination and cross-examination of witnesses and parties are frequently employed, and briefs are filed more often at this level than any other.
In addition to the appeals on original claims, all applications for determination of the percentage of permanent partial disability benefits (C-92) under Section 4123.57, Revised Code, all applications for lump-sum settlements under Section 4123.65, Revised Code, and all claims for additional awards under Section 35, Article II, Ohio Constitution, for injuries caused by the employers’ violation of specific safety requirements, are heard and finally determined by the commission. See Section 4121.131, Revised Code. About 90 per cent of the more than 10,000 applications for determination of the percentage of permanent partial disability benefits filed each year are filed by claimants represented predominantly by lawyers. Employers are represented in such cases predominantly by service companies. The vast majority of some 6,000 applications for lump-sum settlements originate with the claimant, who is represented in 9 cases out of 10 and usually by an attorney at law. Employers in such cases are represented in about 60 per cent of the hearings, predominantly by service companies. Normally both employer and claimant are represented and usually by lawyers in the approximately 200 claims for additional awards under the Constitution.
Consistent with the purpose of the joint committee sponsoring the constitutional amendment, which became Section 35, Article II, that injured workers should be able to obtain compensation without the necessity of employing attorneys (Goodman v. Beall, supra, 429), the General Assembly, when amending the Workmen’s Compensation Act in 1931 (114 Ohio Laws, 790, 791), made in what is now Section 4123.06, Revised Code, specific provision for representation by “attorneys, agents or representatives. ’ ’
This language, plus the specific provision added to that section in 1951, for notifying the Ohio State Bar Association *160 and local bar associations of any reprimand or suspension of an attorney, clearly indicates that a representative or agent need not be an attorney. Section 4123.06 also provides (1) that the commission shall make rules concerning payment of fees and solicitation of business by “attorneys, agents, or representatives”; (2) for reprimand or suspension from practice before the commission of “representatives” of claimants or employers; and (3') for readmission of suspended representatives. Section 4123.65 provides for notice of application for final settlement to claimant’s “representative” and to employer’s “representative.” Section 4123.417 provides that no fee shall be charged by any “attorney, representative or agent” in connection with claims to participate in the “disabled workmen’s relief fund.” The committee admits that there are many activities performed in connection with workmen’s compensation which are not the practice of law. It concedes that the determining of rates, the proper classification of the industrial activity, the determination of a proper reserve and the determination of merit and penalty rates do not constitute the practice of law but nonetheless constitutes practice before the commission.
The General Assembly obviously intended to permit the Industrial Commission to reprimand or suspend from practice before it attorneys who violate its rules and regulations. Such sanctions are available even though the violation by the attorney might not be cause for disbarment or because of lack of knowledge or laxity on the part of the bar might not lead to the disbarment of such an attorney. As the committee admits, it is clear that the General Assembly also intended to give the commission the power to regulate and discipline those persons practicing before it who are not practicing law. This being so it would appear that the legislative policy can be sustained only if that which constitutes the practice of law in the workmen’s compensation process is defined so as to leave functions for nonlawyers to perform.
The General Assembly, having created the administrative organization and claims procedure described above, deemed it necessary for the Administrator of the Bureau of Workmen’s Compensation to be represented by an attorney at law in all pro *161 ceedings subsequent to the decision of the deputy administrator except where an application for reconsideration by the administrator is filed, in which case the administrator is to be represented by a lawyer in all proceedings subsequent to his order on reconsideration. Surely, if the administrator requires the services of one qualified as an attorney at law at and after these points in the process, then it seems reasonable to assume that if the claimant and the employer are to be adequately represented they too should be represented by an attorney at law.
The conflicting interest of the public, as discussed herein, would appear to be fairly balanced and protected if it were held that any act taken with respect to a claim for workmen’s compensation by one acting in a representative capacity subsequent to the original decision of the Administrator of the Bureau of Workmen’s Compensation, if no application for reconsideration is filed, or, if an application for reconsideration is filed, subsequent to a decision of the administrator denying the application for reconsideration or subsequent to the decision of the administrator upon reconsideration, constitutes the practice of law. The judgment of affirmance by the Court of Appeals includes activities engaged in by the respondents prior to such decisions of the administrator. To that extent, the judgment of the Court of Appeals should be modified and, as modified, affirmed.
In conclusion, three comments regarding the majority opinion in this case appear to be in order. First, it is difficult to understand how the charging of a fee is relevant to the protection which should be afforded the public against the hazards of those persons who are unqualified to act in a representative capacity respecting workmen’s compensation. Apparently, under the majority view, any person may continue to render advice or services respecting workmen’s compensation as long as no fees for such advice or services are charged or received, without regard to the qualifications of such person. Second, although these respondents represented only claimants, there are many reasons for defining the practice of law so as to treat representatives of claimants and employers alike. To restrict the activities of those representing claimants without also restricting the activities of those representing employers is clear *162 ly discriminatory. The definition of what constitutes the practice of law with respect to workmen’s compensation, which I have proposed, would treat all representatives alike regardless of the mode of their compensation. Third, it should be noted that by paragraph one of the syllabus the majority of this court have nullified express provisions of Section 4123.06, Revised Code, respecting the authority conferred upon the Industrial Commission to reprimand or suspend from practice before the commission any attorney at law who violates any reasonable rule or regulation of the commission. Such a decision seems entirely unnecessary for the disposition of this case and may well be one from which the court may be forced to recede at a later date.